# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Alan Adams, Lowell Albert Jr., Elvin Agnew, Michael Anderson, Robert Arnold, Darrell Becker, Larry Behm, Harvey Bergstrom, Dale Bittner, Pius Black, Darren Boschee, Richard Britton, Curtis Brown, Steven Buchmeier, Robert Buck, Richard Burtch, Richard Camrud, John Carlblom, Jerome Caron, Leighton Carow, Wayne Clark, Dennis Deckert, Jonathon DeVries, Joel DeWald, Marvin Duchsherer, Ralph Duchsherer, Boyd Entzi, Earl Erdmann, Steven Fike, Kerry Froemke, Glenn Gerving, Kevin Gigstad, John Gisi, Ronald Grossman, Frederick Gruman, Troy Hanson, Perry Henningsen, Lynn Hodgson, Robert Huffman, Dennis Hummel, John Ihry, Alfred Jacobson, Kevin Johnson, William Johnson, Paul Kasowski, Craig Kemmett, Alden Kempel, Kenneth Kilichowski, Jordan Kippen, Rodney Kluvers, Brian Kraft, Terry Langdahl, Eric Lashman, Ryan Latendresse, Loren Leininger, Jonathan Liechty, Jeffery Mitchell, Stanley Naumann, Dallas Nesemeier, Craig Nice, Terry Novak, James Odenbach, Lyle Orth, David Pauly, Gerald Rattei, Dennis Roesler, Kent Roesler, Larry Roney, Lloyd Rossiw, Neil Saunders, Richard Schaan, Alan Schale, Kenneth Schneider, Daniel Schuetz, Lyle Shephard, Paul Skarnagel, Steven Spitzer, Joey Stahl, Mark Steenson, Benjamin Suda, Thomas Trautman, Eldon Troftgruben, Philip Volk, Allen Wagner, Russell Wagner, Darrel Were, Larry Wetzel, Loren Zundel, Donald Ahle, Ronnie Arens, Benjamin Ashcraft, John Aylward, Jerry Barker, John Behrman, Todd Brandt, Sammy Branum, James Bridges, George Briscoe Sr., Geary Chambers, Susan Chapman,<br><br>            Plaintiffs,<br><br>vs. | Court File No. _____ |

Syngenta Seeds, Inc. and
Syngenta Crop Protection, LLC

        Defendants.

## SYNGENTA DEFENDANTS' NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332 and 1441(a), defendants Syngenta Crop Protection, LLC, and Syngenta Seeds, Inc. (now known as Syngenta Seeds, LLC) (collectively "Syngenta"), expressly reserving all rights otherwise to respond to this lawsuit, including but not limited to any objection to improper venue, hereby remove the above-captioned case, which was filed in the District Court for Hennepin County, Fourth Judicial District, State of Minnesota, No. 27-CV-17-11590, to the United States District Court for the District of Minnesota.

This Court has subject-matter jurisdiction over this action and the case is therefore removable. Specifically, this action is removable because this Court has jurisdiction under the Class Action Fairness Act and pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).

## REMOVAL JURISDICTION

1. This case is a civil action that was filed on August 1, 2017 in the District Court for Hennepin County, Fourth Judicial District, State of Minnesota, styled *Alan Adams, et al. v. Syngenta Seeds, Inc. and Syngenta Crop Protection, LLC*, No. 27-CV-17-11590. *See* Compl. (attached as Ex. A). Plaintiffs initiated the case by service when Syngenta Seeds, Inc. (now Syngenta Seeds, LLC) was served with the Complaint on July 13, 2017 via process server on its registered agent in Delaware. *See* Notice of Service (attached as Ex. B).

2. Removal is timely under 28 U.S.C. § 1446(b). Syngenta has filed this Notice of Removal within thirty (30) days of when the Complaint was served by process server on its registered agent for service of process in Delaware on July 13, 2017. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322, 1325-26 (1999); *see also Marano Enters. of Kan. v. Z-Teca*

2

*Rests., L.P.*, 254 F.3d 753, 756 (8th Cir. 2001) (holding that each defendant has thirty days from formal service to remove).

3. Removal to this Court is proper because the Fourth Judicial District Court for Hennepin County, State of Minnesota, is located within the geographic reach of the U.S. District Court for the District of Minnesota. 28 U.S.C. § 1441(a).

4. As required by 28 U.S.C. § 1446(a), Syngenta has attached to this notice "a copy of all process, pleadings, and orders served upon" it. More specifically, attached are the following documents: (a) Plaintiffs' Complaint and accompanying exhibits (Ex. A); and (b) all process, pleadings and orders that have been served upon Syngenta (Ex. B).

5. Upon filing this Notice of Removal, Syngenta will provide written notification to Plaintiffs' counsel and will file a Notification of Removal (attaching a copy of this Notice of Removal) with the Fourth Judicial District Court for Hennepin County, State of Minnesota.

## BACKGROUND

6. Plaintiffs are one hundred farmers who engage in the business of planting, growing, harvesting, gathering, distributing and/or selling corn in the states of North Dakota and Missouri. *See* Compl. ¶ 10, Ex. A.

7. No Plaintiff alleges that it is a citizen of any state other than North Dakota or Missouri. No Plaintiff alleges that it does business in any state other than North Dakota or Missouri. *Id.*

8. Although Plaintiffs refer to Syngenta Seeds, Inc. (now Syngenta Seeds, LLC) and Syngenta Crop Protection, LLC as a single "conglomerate" with its principal place of business in Minnesota in their Complaint, Compl. ¶ 2, these are two distinct entities, neither of which is a citizen of Minnesota.

9. Federal courts must "disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 100 S. Ct. 1779,

1782 (1980). Although the Complaint nominally names Syngenta Seeds, Inc. as a defendant, Syngenta Seeds, Inc. converted to Syngenta Seeds, LLC under Delaware law (and Syngenta Seeds, Inc. thus ceased to exist) as of December 31, 2015—over a year and a half before Plaintiffs initiated this lawsuit.[1] *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 714 F.3d 1055, 1056 (8th Cir. 2013) ("[T]he parties must be diverse both when the plaintiff initiates the action in state court and when the defendant files the notice of removal in federal court."). Under Delaware law, "all debts, liabilities and duties of the corporation that has converted shall remain attached to the other entity or business form to which such corporation has converted, and may be enforced against it to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as such other entity or business form." Del. Code Ann. tit. 8, § 266(h). Thus, Syngenta Seeds, LLC is the proper defendant in this case, and Syngenta Seeds, Inc. is a nominal defendant that must be disregarded in evaluating jurisdiction. It is the citizenship of Syngenta Seeds, LLC that is relevant for diversity of citizenship purposes. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 359 (3d Cir. 2013) (holding that, following a conversion to a limited liability company under Delaware law, the citizenship of the post-conversion limited liability company is the relevant citizenship for jurisdictional purposes and the pre-conversion entity is a nominal defendant that must be disregarded); *see also In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, 692 F. Supp. 2d 1025, 1028 n.1 (S.D. Ill. 2010) (applying Delaware law and only considering the citizenship of the post-conversion limited liability company in for diversity of citizenship purposes).

---

[1] As the District of Kansas has recognized in a related federal MDL, "there is no basis to conclude that the conversion was effected for purposes of manufacturing diversity jurisdiction in later-filed cases." *In re Syngenta AG MIR162 Corn Litig. (Terway v. Syngenta Seeds, Inc.)*, No. 14-MD-2591-JWL, 2016 WL 5481997, at *3 (D. Kan. Sept. 29, 2016).

10. This exact issue was previously argued in a federal MDL in the District of Kansas concerning the same subject matter as this case against the same defendants, and the MDL Court agreed that "Syngenta Seeds, Inc. is only a nominal party, whose former citizenship is [] irrelevant to the question of diversity jurisdiction." *In re Syngenta AG MIR162 Corn Litig. (Terway v. Syngenta Seeds, Inc.)*, No. 14-MD-2591-JWL, 2016 WL 5481997, at *2 (D. Kan. Sept. 29, 2016). As the MDL Court explained, under Delaware law, a conversion from a corporation to an LLC results in "[o]nly one entity remain[ing] after the conversion, and that entity is the LLC; accordingly, in essence, the corporation does cease to exist." *Id.* "Therefore, the surviving LLC, which assumed any liability of the corporation"—that is, Syngenta Seeds, LLC—"is the real party to the controversy." *Id.*

11. The sole member of Syngenta Seeds, LLC is Syngenta Corporation. Syngenta Corporation is a Delaware corporation with its principal place of business in Delaware. Syngenta Corporation is thus a citizen of Delaware. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1183 (2010). A limited liability company's citizenship is determined solely by the citizenship of its members. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S.Ct. 1012, 1017 (2016) (declining "invitation to apply the same rule to an unincorporated entity that applies to a corporation" and leaving it "up to Congress if it wishes" to apply the statutory "special jurisdictional rule" for determining a corporation's citizenship to other kinds of entities); *see also GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). The state of organization and the principal place of business are not relevant to the citizenship of an LLC. *Id*.

12. Syngenta Crop Protection, LLC is a citizen of Delaware because the sole owner and member of Syngenta Crop Protection, LLC is Syngenta Seeds, LLC. As explained above, the sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is a citizen of Delaware.

13. At all times relevant to this action, all Plaintiffs have been engaged in farming in the State of North Dakota or Missouri. Compl. ¶ 1. Plaintiffs allege that they have been damaged by, *inter alia*, "Syngenta's premature release of VIPTERA corn" and "Syngenta's premature release of DURACADE corn," which "caus[ed] a depression in corn prices." Compl. ¶ 9. Plaintiffs allege that "the prices Plaintiffs received for corn sold after the market's detection of MIR 162's presence dropped significantly, causing the damages sought by Plaintiffs." *Id*. ¶ 11.

14. Plaintiffs brought this lawsuit alleging four claims: (1) public nuisance; (2) negligence; (3) tortious interference with prospective economic advantage; and (4) violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§325D.43 *et seq.* Compl. ¶¶ 15-46.

**JURISDICTION EXISTS UNDER THE MASS ACTION PROVISION OF THE CLASS ACTION FAIRNESS ACT**

15. Congress enacted CAFA to "ensur[e] Federal court consideration of interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1346 (2013) (citation omitted). "A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits." *Bell v. Hershey Co*., 557 F.3d 953, 957 (8th Cir. 2009). Under CAFA, an action is removable to federal court if (1) there is minimal diversity; (2) the proposed class contains at least 100 members; and (3) the amount in controversy is at least $5 million in the aggregate. 28 U.S.C. §§ 1332(d), 1453(b); *see, e.g.*, *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011). To further

Congress' intent, the Supreme Court made clear that CAFA must be interpreted broadly in favor of removal" and "no antiremoval presumption" applies in "cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also, e.g.*, *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) ("Applying this binding precedent from the Supreme Court, we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions.").

16. For purposes of removal and "section 1453, a mass action shall be deemed to be a class action" if it otherwise meets the provisions of CAFA. 28 U.S.C. § 1332(d)(11)(A). A "mass action means any civil action…in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact" and "whose claims in a mass action satisfy the jurisdictional amount requirements." *Id*. § 1332(d)(11)(B)(i).

17. **Minimal Diversity of Citizenship**. Minimal Diversity exists because all of the named plaintiffs are citizens of North Dakota or Missouri and none of the defendants is a citizen of North Dakota or Missouri. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 740 (2014) ("Under [CAFA's diversity] requirement, a federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'") (quoting 28 U.S.C. § 1332(d)(2)(A)); *see also supra*, ¶¶ 6-12.

18. **100 Class Members**. Plaintiffs' Complaint contains 100 plaintiffs, rendering the case removable. 28 U.S.C. § 1332(d)(5)(B) (the case is not removable if "the number of members of all proposed plaintiff classes in the aggregate is *less than 100*") (emphasis added); *see also Anderson v. Bayer Corp.*, 610 F.3d 390, 392 (7th Cir. 2010) (recognizing removability of case under CAFA where there were exactly 100 plaintiffs); *Gilmore v. Bayer Corp.*, No. CIV. 09-

7

986-GPM, 2009 WL 4789406, at *3 (S.D. Ill. De. 9, 2009) (upholding removal under CAFA where there were exactly 100 plaintiffs).

19. **$5 Million Aggregate In Controversy**. The face of the Petition confirms that the aggregate amount in controversy exceeds $5,000,000. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) ("when determining the amount in controversy, the question is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are") (emphasis in original) (quotations omitted). Plaintiffs allege that they "have incurred, and will continue to incur, substantial losses arising from the loss of export markets and prices depressions," Compl. ¶ 8, and that "the prices Plaintiffs received for corn sold after the market's detection of MIR 162's presence dropped significantly." *Id*. ¶ 11. Plaintiffs allege damages "in excess of $50,000." Compl. ¶ 29. The Complaint can only reasonably read as in excess of $50,000 *per plaintiff* given 100 plaintiffs, and thus is in excess of $5 million in the aggregate.[2]

20. Although Syngenta denies that it is liable or that damages are proper, the amount *in controversy* exceeds $5 million in the aggregate even setting aside Plaintiffs' own allegations. In a related case filed in Hennepin County, Daniel Mensik, a single Nebraska farmer, claimed over $100,000 in compensatory damages alone, covering a time period of November 18, 2013 through August 31, 2018. Further, as explained below, *see supra* ¶¶ 21-23, calculating alleged damages for an average North Dakota farmer, yields an amount in controversy of $350,415.28 per farmer, and calculating alleged damages for an average Missouri farmer yields and amount in controversy of $79,686.36 per farmer. Plaintiffs identify 88 North Dakota farmers and 12

---

[2] For comparison, the plaintiffs' expert in the related federal MDL cases, Bruce Babcock, has proposed a damages estimate for the nationwide class of $5.77 billion. *See* Ex. C at 6, April 30, 2017 Expert Report of Bruce Babcock.

Missouri farmers. Using the averages calculated below, this yields an aggregate amount in controversy of $31,792,780.90. *See Raskas*, 719 F.3d at 888 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.") (citation omitted).

21. Although Plaintiffs do not specify damages beyond stating that they are in "excess" of $50,000, based upon the allegations in the Complaint, the amount in controversy exceeds $75,000 for at least one, and likely all of the Plaintiffs. Each plaintiff claims compensatory damages for "depressed prices for the sale of Plaintiffs' corn." Compl. ¶ 37. While plaintiffs do not allege the number of bushels grown, average farm size in Missouri is 294 acres. *See* 2016 State Agricultural Overview, Missouri, *available at* https://www.nass.usda.gov/Quick_Stats/Ag_Overview/stateOverview.php?state=MISSOURI. The average farm size in North Dakota is 1,312 acres. *See* 2016 State Agricultural Overview, North Dakota, *available at* https://www.nass.usda.gov/Quick_Stats/Ag_Overview/stateOverview.php?state=NORTH%20DAKOTA. According to USDA crop production reports, the average bushels/acre from 2013-2015 were 158.8, 171.0 and 168.4 bushels per acre. *See* Nat'l Agric. Stat. Serv., USDA, http://usda.mannlib.cornell.edu/MannUsda/viewDocumentInfo.do?documentID=1046. The 2016 yield and projected 2017 yield are 174.6 and 169.5 bushels per acre, respectively. *Id.* Assuming that the 2018 yields remain constant, for an average Missouri farm, production would be as follows:

| Year | Bushels/Acre Yield | Bushels/ Year For A Single 294 Acre Farm |
|---|---|---|
| *2013* | *158.8* | *46,687.2* |
| *2014* | *171.0* | *50,274* |
| *2015* | *168.4* | *49,509.6* |
| *2016* | *174.6* | *51,332.4* |
| *2017* | *169.5* | *49,833* |
| *2018* | *169.5* | *49,833* |

22.  For an average North Dakota farm, production would be as follows:

| Year | Bushels/Acre Yield | Bushels/ Year For A Single 1,312 Acre Farm |
|---|---|---|
| *2013* | *158.8* | *208,345.6* |
| *2014* | *171.0* | *224,352* |
| *2015* | *168.4* | *220,940.8* |
| *2016* | *174.6* | *229,075.2* |
| *2017* | *169.5* | *222,384* |
| *2018* | *169.5* | *222,384* |

23.  Plaintiffs in the related Minnesota state litigation claim that Syngenta is responsible for per-bushel losses of 50 cents per bushel during 2013 and 2014, and 15 cents per bushel beginning December 2014 and going forward into perpetuity.  Using these calculations, the alleged compensatory damages for an average Missouri farm would have the amount in controversy that follows:

| Year | Bushels/Acre Yield | Bushels/ Year For 294-Acre Farm | Rao Estimates Of Per-bushel Loss | Alleged Loss For A Single 294-Acre Farm |
|---|---|---|---|---|
| *2013* | *158.8* | *46,687.2* | *$0.50* | *$23,343.60* |
| *2014* | *171.0* | *50,274* | *$0.50* | *$25,137.00* |
| *2015* | *168.4* | *49,509.6* | *$0.15* | *$7,426.44* |
| *2016* | *174.6* | *51,332.4* | *$0.15* | *$7,699.86* |
| *2017* | *169.5* | *49,833* | *$0.15* | *$7,474.95* |
| *2018* | *169.5* | *49,833* | *$0.15* | *$7,474.95* |
| *Alleged total losses for a single 294-acre farm based on decline in corn price using the contested methodology presented by plaintiffs in Minnesota:    $78,556.8* ||||| 

10

24.     Using Plaintiffs' calculations, the alleged compensatory damages for an average North Dakota farm would have the amount in controversy that follows:

| Year | Bushels/Acre Yield | Bushels/ Year For A Single 1,312-Acre Farm | Rao Estimates Of Per-bushel Loss | Alleged Loss For A Single 1,312-Acre Farm |
|---|---|---|---|---|
| 2013 | 158.8 | 208,345.6 | $0.50 | $104,174.8 |
| 2014 | 171.0 | 224,352 | $0.50 | $112,176 |
| 2015 | 168.4 | 220,940.8 | $0.15 | $33,141.12 |
| 2016 | 174.6 | 229,075.2 | $0.15 | $34,361.28 |
| 2017 | 169.5 | 222,384 | $0.15 | $33,357.60 |
| 2018 | 169.5 | 222,384 | $0.15 | $33,357.60 |
| *Alleged total losses for a single 1,312-acre farm based on decline in corn price using the contested methodology presented by plaintiffs in Minnesota:*   $350,568.40 ||||  |

25.     In addition, Plaintiffs also seek attorneys' fees under the Minnesota Uniform Deceptive Trade Practices Act. Compl. ¶ 46. It is well settled that, where "Plaintiff[s] request[] attorneys fees pursuant to a statute, attorneys fees are properly considered when analyzing whether the amount in controversy has been reached." *Skoda v. Lilly USA LLC*, No. 10-CV-4865 MJD, 2011 WL 3100342 at *3 (D. Minn. Apr. 11, 2011). In Minnesota, "courts have used the lodestar method for determining the reasonableness of statutory attorney fees." *Green v. BMW of N. Am., LLC*, 826 N.W. 2d 530, 535 (Minn. 2013). "Under the lodestar method, a court must first determine the number of hours reasonably expended on the litigation and then multiply those hours by a reasonable hourly rate." *Id.* at 536. Given the complexity and scope of this case, a rate of $500 per hour is a reasonable estimate for purposes of calculating attorneys fees for the amount in controversy. Even assuming that Plaintiffs' counsel spent 3,000 hours on this case (a low estimate given the years-long schedule that other, related cases have taken), this yields

$150,000, an additional $1,500 per plaintiff, bringing the average per-plaintiff amount in controversy to $80,056 in Missouri and to $352,068.40 in North Dakota.[3]

26.   **None Of CAFA's Narrow Exceptions Applies**.  *See Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) ("Once CAFA's initial jurisdictional requirements have been established by the party seeking removal . . . the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies."). The local-controversy exception does not apply because none of the defendants is a citizen of Minnesota. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc) (requiring in part that "at least [one] defendant is a defendant who is a citizen of the State in which the action was originally filed"); *see also Westerfeld*, 621 F.3d at 822 (requiring "at least one defendant 'from whom significant relief is sought' . . . and 'whose alleged conduct forms a significant basis for the claims' . . . is a citizen of the state in which the class action was originally filed"). Neither the home-state controversy exception nor the discretionary jurisdiction exception applies for the same reason. *See* 28 U.S.C. § 1332(d)(4)(B) (requiring in part that "the primary defendants, are citizens of the State in which the action was originally filed" for the home-state controversy exception); 28 U.S.C. § 1332(d)(3) (requiring in part that "the primary defendants are citizens of the State in which the action was originally filed" for the discretionary jurisdiction exception). Therefore, this Court has jurisdiction under CAFA.

---

[3] As the District of Kansas noted in *In re Syngenta AG MIR162 Corn Litig.*, *(Terway v. Syngenta Seeds, Inc.)*, No. 14-MD-2591-JWL, 2016 WL 5481997, at *6 (D. Kan. Sept. 29, 2016), the amount in controversy is met where the Court "cannot say that there is a legal certainty that the damages will not exceed [the calculated] amount."

## CONCLUSION

For the foregoing reasons, Syngenta removes this action from the Fourth Judicial District Court for Hennepin County, State of Minnesota, to the United States District Court for the District of Minnesota.

Dated:  August 11, 2017            **MASLON LLP**


By:   *s/Steven L. Schleicher*
      Steven L. Schleicher (#0260587)
      D. Scott Aberson (#0387143)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone:    612-672-8200
Facsimile:    612-672-8397
E-mail:       steve.schleicher@maslon.com
              scott.aberson@maslon.com

**COUNSEL FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system. I also certify that a copy has been served on the following via U.S. Mail, postage prepaid and properly addressed, this 11th day of August, 2017.

Charles H. Johnson
**LAW OFFICES OF CHARLES H. JOHNSON, P.A.**
2599 Mississippi Street
New Brighton, MN 55112

                                    *s/Steven L. Schleicher*
                                    Steven L. Schleicher