STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

CASE TYPE:  Other Civil

In re Syngenta Litigation,

Alan Adams, Lowell Albert Jr., Elvin Agnew, Michael Anderson, Robert Arnold, Darrell Becker, Larry Behm, Harvey Bergstrom, Dale Bittner, Pius Black, Darren Boschee, Richard Britton, Curtis Brown, Steven Buchmeier, Robert Buck, Richard Burtch, Richard Camrud, John Carlblom, Jerome Caron, Leighton Carow, Wayne Clark, Dennis Deckert, Jonathon DeVries, Joel DeWald, Marvin Duchsherer, Ralph Duchsherer, Boyd Entzi, Earl Erdmann, Steven Fike, Kerry Froemke, Glenn Gerving, Kevin Gigstad, John Gisi, Ronald Grossman, Frederick Gruman, Troy Hanson, Perry Henningsen, Lynn Hodgson, Robert Huffman, Dennis Hummel, John Ihry, Alfred Jacobson, Kevin Johnson, William Johnson, Paul Kasowski, Craig Kemmett, Alden Kempel, Kenneth Kilichowski, Jordan Kippen, Rodney Kluvers, Brian Kraft, Terry Langdahl, Eric Lashman, Ryan Latendresse, Loren Leininger, Jonathan Liechty, Jeffery Mitchell, Stanley Naumann, Dallas Nesemeier, Craig Nice, Terry Novak, James Odenbach, Lyle Orth, David Pauly, Gerald Rattei, Dennis Roesler, Kent Roesler, Larry Roney, Lloyd Rossiw, Neil Saunders, Richard Schaan, Alan Schale, Kenneth Schneider, Daniel Schuetz, Lyle Shephard, Paul Skarnagel, Steven Spitzer, Joey Stahl, Mark Steenson, Benjamin Suda, Thomas Trautman, Eldon Troftgruben, Philip Volk, Allen Wagner, Russell Wagner, Darrel Were, Larry Wetzel, Loren Zundel, Donald Ahle, Ronnie Arens, Benjamin Ashcraft, John Aylward, Jerry Barker, John Behrman, Todd Brandt, Sammy Branum, James Bridges,

Court File No: _____

Judge: Thomas M. Sipkins

Originating County:  Hennepin County [Producer]

**COMPLAINT AND JURY DEMAND**

George Briscoe Sr., Geary Chambers, Susan
Chapman,

        Plaintiffs,

vs.

Syngenta Seeds, Inc.; and
Syngenta Crop Protection, L.L.C.

        Defendants.

Plaintiffs, through the undersigned attorneys, bring this action against Defendants
Syngenta Seeds, Inc. and Syngenta Crop Protection, L.L.C., (collectively "Defendants" or
"Syngenta") and allege as follows:

### FACTS

1.      At all times relevant to this litigation, Plaintiffs were and are engaged in the
business of planting, growing, harvesting, gathering, distributing and/or selling corn. Plaintiffs'
income results from the sale of corn at the publicly-determined market price. Each plaintiff is
engaged in the aforementioned business within the State and/or Judicial District listed in the
attached Exhibit A.

2.      Syngenta is a major agribusiness conglomerate with its principal place of business
in Minnetonka, Minnesota. Syngenta is in the commercial seed business and develops, produces,
sells and distributes, through dealers or directly to individual growers, agricultural products
throughout the United States. Syngenta is a leading producer of genetically-modified corn seed.

3.      Syngenta produced a genetic trait called MIR162, which is used in its products
Agrisure VIPTERA™ and Agrisure DURACADE™. The MIR162 trait was created to produce a
protein that results in insect resistance. In 2010, Syngenta began selling MIR162 under the
Agrisure VIPTERA™ ("Viptera") trademark in the United States. Agrisure DURACADE™ is

2

Syngenta's second-generation product utilizing the MIR162 trait in corn and was released, sold and distributed for planting in 2014.

4.      A substantial portion of the United States corn crop, including, on information and belief, corn produced by Plaintiffs is exported. China is a major destination for corn exported from the United States.

5.      The United States corn market is commodity-based, in that corn grown by farmers, including corn grown, harvested, gathered, distributed or sold by Plaintiffs, is harvested, gathered, commingled and subsequently shipped through local, regional and terminal distribution centers. As a result, when corn of substandard quality or that is unapproved for export is commingled with other corn, export partners may reject entire shipments as a result of this commingling.

6.      Syngenta released Agrisure VIPTERA™ and Agrisure DURACADE™ for use in the United States' market prior to obtaining approval for purchase or consumption of VIPTERA or DURACADE corn in China. Syngenta knew this, but marketed and sold VIPTERA and DURACADE containing MIR162. Syngenta's conduct was reckless, deceptive and unlawful, and resulted in financial loss to Plaintiffs, including but not limited to a depression in corn prices.

7.      Syngenta's release of Agrisure VIPTERA™ and Agrisure DURACADE prior to obtaining approval for the purchase or consumption of VIPTERA and DURACADE corn in China resulted in significant decreases in United States corn sales to China, and a decrease in the price of corn.

8.      Due to Syngenta's conduct described and complained of herein, Plaintiffs have incurred losses, damages and injuries resulting from the rejection of United States-grown corn by export markets. Due to Syngenta's release of Agrisure VIPTERA™ and Agrisure DURACADE, Plaintiffs have incurred, and will continue to incur, substantial losses arising from the loss of export

3

markets and price depressions, in amounts that have yet to be fully determined, but which exceed $50,000.

9.     Plaintiffs have been damaged by: (1) Syngenta's premature release of VIPTERA corn into the United States corn and seed supply, resulting in the reduction and/or prevention of United States corn into China and causing a depression in corn prices; (2) Syngenta's premature release of DURACADE corn into the United States corn and seed supply, resulting in the reduction and/or prevention of United States corn into China and causing a depression in corn prices; (3) Syngenta's failure to disclose material facts regarding MIR162 not being approved for purchase or consumption in China; and (4) Syngenta's premature release of VIPTERA and DURACADE corn into the United States corn and seed market, resulting in the commingling of MIR162 corn with non-MIR162 corn in grain elevators, terminals, rail cars, barges, ships and other means of storage and/or transport. But for the conduct of Syngenta complained of herein, Plaintiffs would not have suffered these losses.

**PARTIES**

10.     At all times relevant to this litigation, Plaintiffs were and are engaged in the business of planting, growing, harvesting, gathering, distributing and/or selling corn. Plaintiffs refer to the attached Exhibit A for a description of the State where Plaintiffs were engaged in business.

11.     As a result of Syngenta's premature release of MIR162 corn seed and Defendants' actions, Plaintiffs have suffered damages because the prices Plaintiffs received for corn sold after the market's detection of MIR162's presence dropped significantly, causing the damages sought by Plaintiffs herein.

4

12.     Defendant Syngenta Crop Protection, LLC is a limited liability company organized and operating under the laws of the State of Delaware with its principal place of business at 410 South Swing Road, Greensboro, North Carolina 27409-2012. Syngenta Crop Protection, LLC may be served through its registered agent, CT Corporation System Inc., 1010 Dale St. North, Saint Paul, Minnesota 55117-5603.

13.     Defendant Syngenta Seeds, Inc. is a Delaware corporation with its principal place of business at 11055 Wayzata Boulevard, Minnetonka, Minnesota 55305-1526 and may be served through its registered agent, CT Corporation System Inc., 1010 Dale St. North, Saint Paul, Minnesota 55117-5603.

14.     Upon information and belief, the acts of Defendants were conducted in concert pursuant to an agreement amongst themselves to act in a collective manner. All defendants, therefore, are jointly and severally liable for the acts complained of herein.

### CAUSES OF ACTION

#### COUNT I
#### PUBLIC NUISANCE

15.     Plaintiffs incorporate by reference all of the above-stated paragraphs as though fully set forth herein.

16.     Through the above-alleged conduct, Syngenta created a public nuisance by causing the systematic and widespread contamination of the United States corn supply with the MIR162 trait through its premature release of Agrisure VIPTERA™ and Agrisure DURACADE™.

17.     This conduct has resulted in an unreasonable interference on the community at large and on a diverse number of persons and entities. This unreasonable interference arises from Syngenta's testing, growing, storing, transporting, selling, disposing or otherwise disseminating VIPTERA and DURACADE corn: (1) without adequate precautions to prevent contamination of

5

the U.S. corn and corn seed supplies; (2) with the knowledge that VIPTERA and DURACADE corn would contaminate other non-genetically modified corn; (3) with the knowledge that such contamination would likely affect the United States corn and corn seed supply; or (4) with the knowledge there was a substantial risk of contamination of the United States corn and corn seed supply earmarked for export.

18.     Syngenta's conduct has unreasonably interfered with the public's right to expect that the corn sold to the general public is free from contamination with VIPTERA and DURACADE corn, and the public's right to be notified that the corn sold to the public is contaminated or otherwise commingled with VIPTERA and DURACADE genetically-modified corn. Said conduct has resulted in the public being denied the ability to choose to purchase and consume non-contaminated corn.

19.     This interference is unreasonable in that it involves a significant interference with the public health, public safety or public welfare.

20.     Plaintiffs have suffered harm as a result of Syngenta's conduct that is distinct from and different than the harm suffered by the general public. Plaintiffs' damages are in excess of $50,000 and include, but are not limited to, depressed prices for the sale of corn produced by Plaintiffs.

21.     Syngenta's conduct constitutes an unreasonable and substantial interference with the rights of the general public, has restricted demand for certain products and services within major export markets, and depressed the prices for corn in all markets.

22.     Syngenta knew or should have known their conduct would naturally or probably result in injuries to Plaintiffs, but regardless, continued with their conduct in reckless disregard or conscious indifference to those consequences.

6

23.    As a direct and proximate result of the foregoing, Plaintiffs have been injured and suffered financial loss in excess of $50,000 for which damages and other relief as may be available at law or equity are warranted.

### COUNT II
### COMMON LAW NEGLIGENCE

24.    Plaintiffs incorporate by reference all of the above-stated paragraphs as though fully set forth herein.

25.    Syngenta had a duty to utilize its professional expertise and exercise that degree of skill and learning ordinarily used under the same or similar business by a person or entity in Syngenta's business of testing, growing, storing, transporting, selling, disposing or otherwise circulating VIPTERA and DURACADE corn.

26.    Syngenta breached this duty by failing to exercise the required degree of care in testing, growing, storing, transporting, selling, disposing or otherwise circulating VIPTERA and DURACADE corn in a manner to prevent it from contaminating the United States corn supply.

27.    The damages suffered by Plaintiffs were or should have been foreseeable to Syngenta.

28.    Plaintiffs were damaged by Syngenta's conduct, including but not limited to the depressed prices for sale of Plaintiffs' corn.

29.    Syngenta's breaches are a direct and proximate cause of the injuries and damages suffered by Plaintiffs in an amount not yet fully determined, but in excess of $50,000. Plaintiffs are entitled to recover damages and other relief as available, at law or equity, as a direct and proximate result of Syngenta's conduct.

7

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

30.     Plaintiffs incorporate by reference all of the above-stated paragraphs as though fully set forth herein.

31.     Plaintiffs had a business relationship with various grain elevators, co-ops and supply companies whereby Plaintiffs would sell the corn they produced to such companies. This business relationship was recorded by invoices, receipts and other documents demonstrating the consistent course of sales.

32.     Plaintiffs had a reasonable expectation of economic gain as a result of these relationships and Plaintiffs reasonably expected to continue selling corn grown on their farms to such companies in the future.

33.     Syngenta knew that Plaintiffs and other farmers had business relationships with grain elevators, co-ops and supply companies in the chain of crop export and sales. Syngenta knew that Plaintiffs and other farmers expected such business relationships to continue in the future.

34.     Despite such knowledge, Syngenta made representations that deceived farmers and other consumers regarding whether grain elevators, co-ops and other supply companies would accept genetically-modified VIPTERA and DURACADE corn, or corn commingled with such genetically-modified corn.

35.     Syngenta interfered with these prospective future business relationships by prematurely releasing VIPTERA and DURACADE corn into the United States market knowing that it would lead to contamination of all United States corn shipments. This conduct prevented United States corn from being sold to certain export markets, including China, which had not granted approval for purchase or consumption of VIPTERA or DURACADE corn.

8

36.     Syngenta's conduct thus prevented the export of United States corn to China, causing depressed prices for corn producers in the United States, including Plaintiffs. As a result, Plaintiffs are unable to sell corn to grain elevators, co-ops, and supply companies at the price Plaintiffs reasonably expected to receive and would have received but for Syngenta's conduct. Plaintiffs, therefore, have been damaged as a result of Syngenta's interference.

37.     Plaintiffs were damaged by Syngenta's conduct, including but not limited to the suffering consequential damages from depressed prices for the sale of Plaintiffs' corn.

38.     As a direct and proximate result of Syngenta's conduct, Plaintiffs have been injured and have suffered financial loss in excess of $50,000, for which damages and other relief as may be available at law or equity are warranted.

**COUNT IV**
**VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**

39.     Plaintiffs incorporate by reference all of the above-stated paragraphs as though fully set forth therein.

40.     The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*, provides in pertinent part:

> **Subdivision 1. Acts constituting.** A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:
> . . .
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
> . . .
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

9

41.     Syngenta has used in commerce false or misleading descriptions of fact, and/or false or misleading representations of fact, which likely or did cause confusion or mistake. These misleading descriptions and/or representations related to VIPTERA's and DURACADE's approval or imminent approval for import into China.

42.     Syngenta's false or misleading descriptions of fact, and/or false or misleading representations of fact, caused or likely caused, customer confusion regarding the approval of corn grown by Plaintiffs from foreign regulatory authorities, including the Chinese government.

43.     Plaintiffs have been and continues to be damaged by Syngenta's conduct.

44.     Plaintiffs' damages were proximately caused by Syngenta's conduct.

45.     As a direct and proximate result of the foregoing, Plaintiffs have been injured and have suffered financial loss in excess of $50,000, for which damages and other relief as may be available at law or equity is warranted.

46.     Because Syngenta's actions were committed willfully, maliciously and intentionally, Plaintiffs are entitled to recover costs and reasonable attorneys' fees pursuant to Minn. Stat. § 325D.45.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for and respectfully request from Defendants, jointly and severally, compensatory damages, together with appropriate equitable relief, costs and attorneys' fees as follows:

A.      Entry of judgment finding:

1.      Syngenta's release of VIPTERA and DURACADE corn constitutes a public nuisance;

2.      Syngenta's release of VIPTERA and DURACADE corn was negligent;

10

3.     Syngenta tortiously interfered with Plaintiffs' prospective economic advantage by releasing MIR162 corn into the United States market; and

4.     Syngenta engaged in a deceptive trade practice under the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44.

B.     Award of monetary damages, including compensatory relief, to which Plaintiffs are entitled at the time of trial in an amount exceeding $50,000.

C.     Award of prejudgment interest.

D.     Award of costs;

E.     Award of reasonable attorneys' fees under Minn. Stat. § 325D.45, subd. 2.

F.     Award of all such other and further relief as may be available at law or equity and may be proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 12, 2017         LAW OFFICES OF CHARLES H. JOHNSON, P.A.

By: s/ Charles H. Johnson
Charles H. Johnson (Bar No. 50696)
2599 Mississippi Street
New Brighton, Minnesota 55112
Telephone: (651) 633-5685
Facsimile: (651) 633-4442
bdehkes@charleshjohnsonlaw.com

*Attorneys for Plaintiffs*

11

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that pursuant to Minn. Stat. §549.211, sanctions may be imposed if the Court finds violation of this section.

Dated: July 12, 2017                    By:  __s/ Charles H. Johnson__
                                                  Charles H. Johnson, 50696

12

**EXHIBIT A**

|  | Plaintiff's Last Name | First Name | State of Residence |
|---|---|---|---|
| 1. | Adams | Alan | ND |
| 2. | Albert Jr. | Lowell | ND |
| 3. | Agnew | Elvin | ND |
| 4. | Anderson | Michael | ND |
| 5. | Arnold | Robert | ND |
| 6. | Becker | Darrell | ND |
| 7. | Behm | Larry | ND |
| 8. | Bergstrom | Harvey | ND |
| 9. | Bittner | Dale | ND |
| 10. | Black | Pius | ND |
| 11. | Boschee | Darren | ND |
| 12. | Britton | Richard | ND |
| 13. | Brown | Curtis | ND |
| 14. | Buchmeier | Steven | ND |
| 15. | Buck | Robert | ND |
| 16. | Burtch | Richard | ND |
| 17. | Camrud | Richard | ND |
| 18. | Carlblom | John | ND |
| 19. | Caron | Jerome | ND |
| 20. | Carow | Leighton | ND |
| 21. | Clark | Wayne | ND |
| 22. | Deckert | Dennis | ND |
| 23. | DeVries | Jonathon | ND |
| 24. | Dewald | Joel | ND |
| 25. | Duchsherer | Marvin | ND |
| 26. | Duchsherer | Ralph | ND |
| 27. | Entzi | Boyd | ND |
| 28. | Erdmann | Earl | ND |
| 29. | Fike | Steven | ND |
| 30. | Froemke | Kerry | ND |
| 31. | Gerving | Glenn | ND |
| 32. | Gigstad | Kevin | ND |
| 33. | Gisi | John | ND |
| 34. | Grossman | Ronald | ND |
| 35. | Gruman | Frederick | ND |

| | Plaintiff's Last Name | First Name | State of Residence |
|---|---|---|---|
| 36. | Hanson | Troy | ND |
| 37. | Henningsen | Perry | ND |
| 38. | Hodgson | Lynn | ND |
| 39. | Huffman | Robert | ND |
| 40. | Hummel | Dennis | ND |
| 41. | Ihry | John | ND |
| 42. | Jacobson | Alfred | ND |
| 43. | Johnson | Kevin | ND |
| 44. | Johnson | William | ND |
| 45. | Kasowski | Paul | ND |
| 46. | Kemmett | Craig | ND |
| 47. | Kempel | Alden | ND |
| 48. | Kilichowski | Kenneth | ND |
| 49. | Kippen | Jordan | ND |
| 50. | Kluvers | Rodney | ND |
| 51. | Kraft | Brian | ND |
| 52. | Langdahl | Terry | ND |
| 53. | Lashman | Eric | ND |
| 54. | Latendresse | Ryan | ND |
| 55. | Leininger | Loren | ND |
| 56. | Liechty | Jonathan | ND |
| 57. | Mitchell | Jeffrey | ND |
| 58. | Naumann | Stanley | ND |
| 59. | Nesemeier | Dallas | ND |
| 60. | Nice | Craig | ND |
| 61. | Novak | Terry | ND |
| 62. | Odenbach | James | ND |
| 63. | Orth | Lyle | ND |
| 64. | Pauly | David | ND |
| 65. | Rattei | Gerald | ND |
| 66. | Roesler | Dennis | ND |
| 67. | Roesler | Kent | ND |
| 68. | Roney | Larry | ND |
| 69. | Rossow | Lloyd | ND |
| 70. | Saunders | Neil | ND |
| 71. | Schaan | Richard | ND |
| 72. | Schale | Alan | ND |
| 73. | Schneider | Kenneth | ND |
| 74. | Schuetz | Daniel | ND |

|  | Plaintiff's Last Name | First Name | State of Residence |
|---|---|---|---|
| 75. | Shephard | Lyle | ND |
| 76. | Skarnagel | Paul | ND |
| 77. | Spitzer | Steven | ND |
| 78. | Stahl | Joey | ND |
| 79. | Steenson | Mark | ND |
| 80. | Suda | Benjamin | ND |
| 81. | Trautman | Thomas | ND |
| 82. | Troftgruben | Eldon | ND |
| 83. | Volk | Philip | ND |
| 84. | Wagner | Allen | ND |
| 85. | Wagner | Russell | ND |
| 86. | Were | Darrel | ND |
| 87. | Wetzel | Larry | ND |
| 88. | Zundel | Loren | ND |
| 89. | Ahle | Donald | MO |
| 90. | Arens | Ronnie | MO |
| 91. | Ashcraft | Benjamin | MO |
| 92. | Aylward | John | MO |
| 93. | Barker | Jerry | MO |
| 94. | Behrman | John | MO |
| 95. | Brandt | Todd | MO |
| 96. | Branum | Sammy | MO |
| 97. | Bridges | James | MO |
| 98. | Briscoe Sr. | George | MO |
| 99. | Chambers | Geary | MO |
| 100. | Chapman | Susan | MO |